# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

## CRIMINAL CASE NO. 3:07cr282

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>)<br>vs. )<br>)<br>)<br>JAMES SINGLETON. )<br>)<br>) | **O R D E R** |

**THIS MATTER** is before the Court on the Defendant's Motion to Suppress Tangible Evidence and Statements[1] [Doc. 21] filed March 31, 2008. This motion was duly referred to the Magistrate Judge pursuant to 28 U.S.C. §636. The Magistrate Judge rendered a Memorandum and Recommendation [Doc. 24], recommending that the Defendant's Motion be denied, to which the Defendant has filed timely objections [Docs. 27 and 28]. The Defendant's second Objection was filed with the Court as a

---

[1] As the caption of Defendant's motion indicates, the Defendant initially sought suppression of both tangible evidence seized and statements made during and following his detention and arrest on July 10, 2007. Subsequently, the Government agreed not to use any of the Defendant's statements in its case in chief, reserving its right to offer evidence of the statements to impeach the Defendant should he testify. The Defendant has reserved the right to challenge the admissibility of the statements should the Government seek to admit them at trial.

"Motion to Amend." The Court will treat this second Objection [Doc. 28] as a Motion for leave to amend the original Objection [Doc. 27] and the amendment will be allowed and the Court considers herein both the Original Objection and the Amended Objection.

I.

The Defendant having filed timely objections to the Memorandum and Recommendation that the Motion to Suppress be denied, the Court reviews *de novo* the particular recommendation to which objections have been filed. Fed. R. Crim. P. 59(b)(3).

The Court has reviewed the Magistrate Judge's Memorandum and Recommendation as well as the recording of the May 13, 2007 suppression hearing before the Magistrate Judge. The Court concludes that the Magistrate Judge's factual findings as stated in the Memorandum and Recommendation are correct, those factual findings are hereby adopted. The following is an abbreviated version of those findings.

On the afternoon of July 10, 2007, Charlotte-Mecklenburg Police Officers Kirk Bynoe, Charles Gunter, and Scott Costa were on routine patrol in a marked police car when they observed the Defendant in the Star

Motel parking lot carrying a clearly visible holstered handgun.  The officers testified that the Star Motel and the nearby Hidden Valley neighborhood are "high crime areas."  Officer Bynoe testified that the "frequent crime" at these locations includes prostitution, drug offenses, robberies, theft of vehicles, and shootings.  Both officers who testified at the suppression hearing both stated that the "high crime" nature of the area and of the Star Motel in particular was a significant factor in how they responded upon observing the Defendant carrying a firearm.

Officer Bynoe testified that he turned the vehicle around and drove it into the parking lot of the Star Motel, and that the officers exited the vehicle with their guns drawn.  He testified that he made eye contact with the Defendant and that the Defendant appeared "afraid" and "nervous."[2]  Both Officers Bynoe and Gunter testified that the Defendant at that point made a 180 degree turn and began walking away from the officers back toward the motel.  Both officers further testified that the Defendant failed to stop upon Officer Gunter's first command.[3]  It is undisputed that the Defendant did

---

[2] Officer Gunter also testified that he perceived a nervous look on the Defendant's face, describing it as a "fight or flight" look.

[3] While this fact was not included in either of the officers' reports, the Magistrate Judge found the officers' testimony on this issue to be credible, and the Court sees no basis to disturb this credibility determination.

3

stop in response to a louder and more aggressive order to stop and that he did not otherwise resist the officers' investigation or his ultimate arrest.

Both Officers Bynoe and Gunter testified that Officer Bynoe secured and handcuffed the Defendant and that Officer Gunter removed the handgun from the holster. Within five to ten minutes of the officers' initial encounter with the Defendant, the officers discovered that the Defendant had a prior felony conviction.

Officer Bynoe testified that those who lawfully carry firearms in a visible manner in this area are typically security officers of one kind or another. He testified that the fact that the Defendant was dressed casually, in shorts and a tank top, and had on no clothing or identification indicating that he was a security officer, increased the officers' suspicion.

## II.

The Defendant first argues that the Magistrate Judge erred in applying the reasonable suspicion standard to the Defendant's detention because the officers handcuffed and arrested him without probable cause. He argues that the sole purpose of the officers' arrest was to confirm their unparticularized suspicion that he was a felon.

4

An officer may stop and briefly detain a person for investigatory purposes (a "Terry stop") where there is "reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989); Terry v. Ohio, 392 US. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968). "As a general rule, officers conducting a Terry stop are authorized to 'take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop.'" United States v. Leshuk, 65 F.3d 1105, 1109 (4th Cir. 1995) (quoting United States v. Hensley, 469 U.S. 221, 235, 105 S.Ct. 675, 684, 83 L.Ed.2d 604 (1985)). Accordingly, the Fourth Circuit has held that "drawing weapons, handcuffing a suspect, placing a suspect in a patrol car for questioning, or using or threatening to use force does not necessarily elevate a lawful stop into a custodial arrest for Miranda purposes." Leshuk, 65 F.3d at 1109-1110.

In the present case, the officers testified that they observed the Defendant walking in a high-crime area with a handgun in a holster at his side. The officers further observed that the Defendant appeared nervous and afraid, and that he attempted to evade them by immediately turning

around 180 degrees and walking away. Based upon these observations, the officers were justified in approaching the Defendant with their weapons drawn and in handcuffing him during the stop. See United States v. Elston, 479 F.3d 314, 320 (4th Cir. 2007) (finding that officers had reasonable suspicion to believe that the defendant was "armed and dangerous" and therefore "did not exceed the limits of a Terry stop by drawing their weapons and placing [the Defendant] in handcuffs"). Accordingly, the Court determines that the manner in which the officers detained the Defendant was consistent with an investigatory Terry stop and not an arrest. Thus, the Defendant's first objection is overruled.

Second, the Defendant contends that even if the Magistrate Judge applied the correct standard in this case, the evidence does not give rise to a finding of reasonable suspicion to believe that the Defendant was engaged in criminal activity. Specifically, the Defendant argues that openly carrying a firearm in North Carolina is legal, and that engaging in legal conduct in a "high crime" area, without more, is not sufficient to support a finding of reasonable suspicion.

The standard of reasonable suspicion "is a less demanding standard than probable cause and requires a showing considerably less than

6

preponderance of the evidence." Illinois v. Wardlow, 528 U.S. 119, 123, 120 S.Ct. 673, 675, 145 L.Ed.2d 570 (2000). However, reasonable suspicion requires something more than an "inchoate and unparticularized suspicion or 'hunch.'" Terry, 392 U.S. at 27, 88 S.Ct. at 1883. "The reasonable suspicion determination does not depend upon any one factor, but on the totality of the circumstances." United States v. Brugal, 209 F.3d 353, 359 (4th Cir.) cert. denied, 531 U.S. 961, 121 S.Ct. 388, 148 L.Ed.2d 299 (2000). The Government has the burden of articulating facts sufficient to support a finding of reasonable suspicion. United States v. Burton, 228 F.3d 524, 528 (4th Cir. 2000).

Upon review of the officers' testimony presented at the suppression hearing, the Court determines that the Government has presented articulable facts to support the officers' reasonable suspicion of criminal activity in this case. First, the officers observed the Defendant carrying a clearly visible holstered handgun. While the open carrying of a weapon may be legal in North Carolina, it is well-established that otherwise legal or innocent conduct may still create reasonable suspicion that criminal activity is afoot. See Wardlow, 528 U.S. at 125, 120 S.Ct. at 677; Reid v. Georgia, 448 U.S. 438, 441, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890 (1980). Second,

the Defendant was openly carrying a gun in a known high-crime area. See United States v. Mayo, 361 F.3d 802, 805 (4th Cir. 2004) ("relevant to the totality of the circumstances are various individual factors traditionally relied upon by police officers, such as whether the stop occurred in a high-crime area"). Third, the Defendant engaged in evasive conduct. While the Defendant argues that he did not run, did not evade the police in any way, and that he stopped when told to do so, the Magistrate Judge found credible the testimony of the officers who testified that the Defendant appeared nervous and afraid and that upon being approached by the officers, the Defendant made a 180 degree turn and began walking away. Further, the Magistrate Judge found credible the officers' testimony that the Defendant did not respond to the officers' first command to stop. This type of evasive conduct is one factor that may contribute to an officer's reasonable suspicion. See Wardlow, 528 U.S. at 676, 120 S.Ct. at 676 ("nervous, evasive behavior is a pertinent factor in determining reasonable suspicion"); United States v. Smith, 396 F.3d 579, 585 (4th Cir.) ("evasive reactions to the presence of police may be considered in determining whether reasonable suspicion exists for an investigatory stop"), cert. denied, 545 U.S. 1122 (2005); United States v. Lender, 985 F.2d 151, 154

(4th Cir. 1993) ("Evasive conduct, although stopping short of headlong flight, may inform an officer's appraisal of a streetcorner encounter."). Further, Officer Bynoe testified that those who lawfully carry firearms in a visible manner in this area are typically security officers of one kind or another, and the fact that the Defendant was dressed casually, in shorts and a tank top, and had on no clothing or identification indicating that he was a security officer, increased the officers' suspicion. Based upon the totality of these circumstances, the Court concludes that the officers had reasonable suspicion, supported by articulable facts, to justify the investigatory stop of the Defendant.

The Court determines that for these reasons, and for the reasons set forth in the Memorandum and Recommendation, the Defendant's objections should be overruled, the findings and conclusions of the Magistrate Judge should be affirmed and adopted by this Court, and the Motion to Suppress should be denied.

**IT IS, THEREFORE, ORDERED** that the Defendant's second Objection [Doc. 28] to the Memorandum and Recommendation be treated as a Motion for leave to amend the Defendant's original Objection [Doc. 27], and that the amendment is allowed.

**IT IS FURTHER ORDERED** that the Memorandum and Recommendation [Doc. 24] of the Magistrate Judge regarding the Motion to Suppress [Doc. 21] is **AFFIRMED** and the Objections [Docs. 27 and 28] thereto are overruled and the Motion to Suppress [Doc. 21] is **DENIED**.

**IT IS SO ORDERED.**

Signed: May 29, 2008

Martin Reidinger
United States District Judge